# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
No. 15-38V
Filed: July 27, 2016

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | UNPUBLISHED |
| LINDA ROCHE, | * | |
| | * | |
| Petitioner, | * | |
| v. | * | Attorneys' Fees and Costs; Contested |
| | * | Reasonable Basis. |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

Paul R. Brazil, Muller Brazil, LLP, Dresher, PA, for petitioner.
Althea W. Davis, United States Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

      On January 12, 2015, Linda Roche ("Petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program[2] (the "Program").  Petitioner alleged that an influenza ("flu") vaccination and a tetanus-diphtheria-pertussis ("Tdap") vaccination administered on November 15, 2013 caused her to develop polymyalgia rheumatic and fibromyalgia.  Petition ("Pet.") at 1-3.  Petitioner now seeks, pursuant to section 15(e) of the Vaccine Act, to obtain an award for attorneys' fees and litigation costs incurred during the course of petitioner's case in the Program.  After careful consideration, the undersigned has determined to **grant the request in full** for the reasons set forth below.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post this order on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, codified as amended at 44 U.S.C. § 3501 and note (2012).  In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B).  Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision.  If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act").  Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

## I.    Facts

Prior to vaccination, petitioner's medical history was significant for reactive airway disease, asthma, neck pain and numbness, irritable bowel syndrome, obesity, arthritis, sciatica, diverticulosis, chronic cholecystitis, a pulmonary nodule, tinnitus, hypothyroidism, hypertensive disorder, depression, and anxiety.  Petitioner's Exhibit ("Pet. Ex.") 2 at 2; 9; 16; 18; 21; 27-28; 34-35; 66; 152; 201.  Furthermore, petitioner indicated that she had exposure to asbestos for several months.  Pet. Ex. 2 at 18.  Petitioner underwent a laparoscopic cholecystectomy for stomach pain and a porcelain gallbladder about a month before vaccination.  Pet. Ex. 2 at 34-56.  On November 15, 2013, Petitioner received the flu and Tdap vaccinations.  Pet. Ex. 1.  Petitioner contacted her physician on November 19, 2013 stating that "[s]he is aching all over and . . . knows she has arthritis but it seems worse since getting the TDap."  Pet. Ex. 2 at 442.  She presented at Urgent Care on November 20, 2013 with complaints of "aching all over" and reports of pain at a level 5 on a 1-10 scale.  Pet. Ex. 2 at 440-41.  She was instructed to follow up with laboratory tests.  *Id.* at 441.

Petitioner presented to Urgent Care again on December 1, 2013 following a motor vehicle accident.  *Id.* at 436.  She complained of back and neck pain and it was noted that she "[a]mbulated to exam room [and was] wearing hard neck collar.  No acute distress . . . alert and oriented."  *Id.* at 434.  She was diagnosed with cervical and back muscle strain and prescribed rest and ibuprofen.  *Id.* at 435.  During a follow-up on December 5, 2013, petitioner continued to complain about increasing back pain and she was prescribed physical therapy and hot packs.  *Id.* at 432-33.  On December 17, 2013, petitioner saw a rheumatologist for "[g]eneralized body aches."  *Id.* at 428.  Bloodwork was taken and these tests showed "some inflammation in the blood, which suggest that [she] may have polymyalgia rheumatic (PMR)."  *Id.* at 426.  Petitioner presented to Urgent Care several days later, on December 21, 2013, for anxiety and was released the same day with diagnoses of PMR, palpitations, anxiety, and urinary frequency.  *Id.* at 421-25.

The next medical visit was recorded on December 28, 2013, when petitioner presented to the Massachusetts General Hospital Emergency Room ("ER") for pain and an asthma flare.  Pet. Ex. 2 at 74, 411.  The treating physician noted that petitioner's "pain appears to be muscular" and she was treated with Valium and released.  *Id.* at 74.  However, her chest x-ray showed a nodule in the right lung and she was instructed to follow up with her primary care physician.  *Id.* at 138.  Petitioner appears not to have seen another physician until March 23, 2014, when she went to the ER for chest pain and pressure.  Pet. Ex. 2 at 128.  Petitioner's lab results, electrocardiogram ("EKG"), X-rays, and cardiac enzymes were normal.  *Id.*  Although a stress test was recommended, petitioner refused this test and was told to follow up with her primary care physician.  Three days later, on March 26, 2014, petitioner went back to the ER with complaints of diarrhea.  Pet. Ex. 2 at 125.  A viral illness was suspected and petitioner returned to the ER two days later, where her lab results showed an elevated white blood cell count and a CT scan showed diverticulosis without infection.  Pet. Ex. 2 at 122.  Petitioner continued to seek care at the ER for various conditions such as fibromyalgia, tinnitus, urinary tract infections, arthritis pain, and elbow pain.  Pet. Ex. 2 at 94; 118-21; 134; 155-57.

2

## II.   Procedural History

Petitioner filed her case on January 12, 2015 and this case was assigned to now-Chief Special Master Nora Beth Dorsey.  Pet. at 1; Notice of Assignment, ECF No. 4.  Two days later, she supplemented her petition by filing several medical records and eventually filing a statement of completion on April 10, 2015.  *See* Pet. Ex. 1-6, Medical Records, ECF Nos. 5, 9; Statement of Completion, ECF No. 10.

Respondent filed her Rule 4(c) Report on May 26, 2015, recommending that the Court deny compensation.  Respondent's Rule 4(c) Report ("Rule 4"), ECF No. 12.  She indicated that the condition from which petitioner suffers is unclear, there is no medical theory to link her alleged injury to the vaccines she was administered, and her treating physicians did not attribute her health condition to the vaccines.  Rule 4 at 15-18.  Following the filing of the Rule 4, a status conference was held where petitioner and respondent were given deadlines by which to file expert reports.  Order, ECF No. 13.  After petitioner filed a motion for extension of time to file her expert report, this case was transferred to the undersigned.  Motion, ECF No. 15; Notice, ECF No. 18.

The undersigned held a telephonic status conference on December 2, 2015, where petitioner's counsel stated that "the expert witness he had retained was unable to unequivocally link the allegedly causal vaccination to petitioner's injury."  Order, ECF No. 20.  Furthermore, he suggested that he would file either a motion for ruling on the record or motion for dismissal. *Id.*  On January 14, 2016, petitioner filed a motion to dismiss and a decision dismissing this case for insufficient proof was filed on February 5, 2016.  Motion, ECF No. 22; Decision, ECF No. 23.

On February 16, 2016, petitioner filed a motion for attorney fees and costs ("Motion"). Motion, ECF No. 24.  In this Motion, petitioner's counsel requested $13,642.50 in attorneys' fees and $1,480.95 in attorneys' costs for a total request of $15,123.45[3].  Motion, at 1-2. Respondent filed a response ("Response") to petitioner's Motion on March 11, 2016.  Response, ECF No. 27.  Respondent argued that petitioner's counsel did not have a reasonable basis for filing this claim as he did not "conduct [an] adequate pre-filing investigation."  Response, at 5-9. Furthermore, she requested that the undersigned determine what a "reasonable" fee award would be in this case.  Response, at 9-10.  In petitioner's reply ("Reply"), filed on March 15, 2016, petitioner responded that it is unnecessary to have treating physicians that support causation or to have retained an expert at the time of filing.  Reply, ECF No. 28, at 2-4.  Furthermore, petitioner's counsel refutes the argument that he did not adequately screen this case as he conducted case law and medical research upon being retained as counsel and requests an additional $3,060.00 in attorneys' fees for preparing the Motion and subsequent Reply.  Reply, at 5-7.  This matter is now ripe for decision.

---

[3] In the Motion, petitioner requested a total of $16,123.45 in attorneys' fees and costs; however, there was a mathematical error and the correct total is $15,123.45.

### III.    Applicable Law

In general, the Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e).  Determining whether an application for fees is reasonable is a matter within the discretion of the presiding special master.  *See Carrington v. Sec'y of HHS,* 85 Fed. Cl. 319, 322-23 (2008), *aff'g* 2008 WL 2683632 (Fed. Cl. Spec. Mstr. June 18, 2008). Special masters are afforded considerable discretion when considering motions for attorney fees. *Id.* For instance, it is within a special master's discretion to reduce fees *sua sponte,* without warning to petitioners. *See e.g.*, *Sabella v. Sec'y of HHS,* 86 Fed. Cl. 201, 208-09 (2009).

 When considering motions for attorney fees and costs, the Court employs the lodestar method to determine the amount an attorney should be compensated for.  *Schueman v. Sec'y of HHS,* No. 04-693V, 2010 WL 3421956 (Fed. Cl. Spec. Mstr. Aug. 11, 2010); *see also Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989) ("The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.") (internal citations omitted).  That said, a special master is not required to conduct a "line-by-line" analysis of a fee request.  *Broekelschen v. Sec'y of HHS,* 102 Fed. Cl. 719, 729 (2011).  Additionally, a special master is "entitled to use…prior experience in reviewing fee applications," including experience with particular attorneys.  *Riggins v. Sec'y of HHS,* 406 Fed. Appx. 479, 481 (Fed. Cir. 2011) (citing *Saxton v. Sec'y of HHS,* 3 F.3d 1517, 1520 (Fed. Cir. 1993)).

Applying these standards, the undersigned finds, for the reasons discussed below, that an award of attorneys' fees and costs is reasonable and appropriate in this case.

### IV.    Discussion

Petitioner's counsel initially requested $16,123.45[4] in attorneys' fees and costs.  Motion, at 2. In his Reply, petitioner's counsel requested an additional $3,060.00 in attorneys' fees for preparing the Reply.  Reply at 7.

In her response to petitioner's initial motion, respondent asserted one objection[5]: she stated that petitioner had not established a reasonable basis to pursue this petition.  Response at 5-11.  Respondent submits no objection to the hourly rates contained in the Application for Fees.

---

[4] As previously noted, the correct total requested should be $15,123.45.

[5] Respondent also noted that she "defers to the special master's statutory discretion in determining a reasonable fee award for this case."  Response at 10.  Additionally, respondent notes that there are likely billing entries from February 13, 2016 that are unrelated to this case. *Id.*

### 1. Challenges to reasonable basis.

The Vaccine Act permits an award of reasonable attorneys' fees and costs if the petition was "brought in good faith and there was a reasonable basis." §15(e)(1). "Neither the Federal Circuit nor [the United States] Court [of Federal Claims] has had occasion to define the meaning of 'reasonable basis' for purposes of fee awards under the Vaccine Act," but it has been interpreted in several cases. *See, e.g., Woods v. Sec'y of HHS,* 105 Fed. Cl. 148, 153 (2012).

Reasonable basis is typically viewed as "an objective standard determined by the 'totality of the circumstances.'" *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). This somewhat amorphous standard has often been defined not by what it includes, but rather by what is lacking in cases in which a reasonable basis has been found not to exist. Typically, reasonable basis is not found when "fundamental inquires [sic] are not made." *Di Roma v. Sec'y of HHS,* No. 90-3277, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Additionally, a case may have a reasonable basis when filed, but may lose reasonable basis during the pendency of the case. *Perreira v. Sec'y of HHS,* 33 F.3d 1375, 1376-77 (Fed. Cir. Aug. 31, 1994); *McNett v. Sec'y of HHS,* No. 99-684V, 2011 WL 760314, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2011). Furthermore, the burden lies with petitioner to "affirmatively demonstrate a reasonable basis." *McKellar v. Sec'y of HHS*, 101 Fed. Cl. 297, 305 (2011). Some of the factors considered when assessing reasonable basis include: "'the factual basis, the medical support, jurisdiction issues', and the circumstances under which a petition is filed." *Chuisano*, 116 Fed. Cl. at 288 (citing *Di Roma*, 1993 WL 496981, at *1). Neither the fact that no medical records or supportive expert opinion was filed nor the fact that the claim was filed beyond the statute of limitations automatically negates a finding of reasonable basis. *Chuisano*, 116 Fed. Cl. at 288 (citations omitted). Furthermore, "[a] looming statute of limitations does not forever absolve a petitioner from his or her obligation to proceed with a reasonable basis to support his claim, at least not if the petitioner hopes to recover any fees and costs." *Id.* at 287 (citations omitted).

In the present case, the undersigned finds that the petitioner had a reasonable basis for filing this claim. Here, the petition was filed on January 12, 2015, a full year after petitioner initially contacted counsel. Motion at 4.[6] Before the petition was filed, petitioner's counsel reviewed cases with similar injuries, discussed petitioner's case with her, including discussing petitioner's medical history and current treatment, and requested and prepared for filing multiple medical records from several practitioners. Motion at 4-7. Additionally, petitioner's counsel filed a thorough petition with a description of petitioner's treatment and requisite citations to medical records, as envisioned under the Vaccine Act. *See generally* § 11(c); Pet. Petitioner's counsel filed several medical record exhibits the day after the petition was filed and at the initial status conference, only a few medical records remained outstanding. Medical Records, ECF No. 5; Order, ECF No. 8. Therefore, I find that petitioner's counsel fulfilled his duty to investigate the claim and did so through research, discussions with his client, Ms. Roche, along with a review of the medical records received.

---

[6] The billing records included with petitioner's Motion are not independently paginated. Thus, the page numbers listed are those assigned by CM/ECF.

Furthermore, petitioner had the factual support necessary to proceed in this case. Although petitioner had a complex medical history, nowhere in her voluminous pre-vaccination records did a medical professional ever diagnose her with or even suspect that she had PMR or fibromyalgia. *See generally* Pet. Ex. 2.  While petitioner did complain of fatigue, body aches, joint pains, and neck pain prior to vaccinations, physicians noted that she had an absence of tenderness in joints or decreased range of motion, symptoms that were noted and prevalent post-vaccination. *See generally* Pet. Ex. 3; Pet. Ex. 2 at 440.  Furthermore, blood testing following vaccination showed inflammatory markers and a diagnosis of PMR was suggested.  Pet. Ex. 2 at 426.  Petitioner continued to be treated for inflammation, aching, and joint pain following vaccination, but her diagnosis was never solidified.  *See generally* Pet. Ex. 2.  However the lack of treating physician support or definitive diagnosis is not in and of itself fatal to petitioner's case.  *See Chuisano v. United States,* 116 Fed. Cl. 276, 285 (2014) ("A vaccine-related injury, however, is not always clear at the outset").

Furthermore, petitioner's counsel dismissed this case when he could not obtain an expert. On June 23, 2015, Chief Special Master Dorsey ordered petitioner to file an expert report by August 24, 2015.  Order, ECF No. 13.  Petitioner's counsel asked for one extension of time to file an expert report, which was granted.  Motion, ECF No. 14; Order, ECF No. 15.  Petitioner's counsel then requested a status conference to discuss the status of the case.  Status Report, ECF No. 19.  During this status conference, petitioner's counsel stated that because he would likely be unable to obtain an expert report, petitioner had decided to dismiss her claim. Order, ECF No. 20; Motion, ECF No. 22.  I find that petitioner's claim was still feasible until petitioner's counsel was unable to obtain an expert, at which point he moved to dismiss the case, which was an appropriate course of action.

Respondent appears to be arguing that petitioner should have obtained an expert report prior to filing this claim; this would effectively raise the bar for filing from "reasonable basis." In her Response, respondent states that "[i]t does not appear that petitioner's counsel sought any additional information from petitioner's treating physicians or potential experts prior to filing the petition."  Response at 8.  Respondent describes this lack of consultation as a failure to perform "fundamental due diligence"; however, finding an expert to opine prior to filing is not required under the Vaccine Act and this heightened filing standard would likely deter future individuals who have sustained vaccine injuries from filing.  *Id.*; Reply at 4, citing *Thomas v. Sec'y of HHS*, No. 13-309V, 2013 WL 5718948 (Fed. Cl. Spec. Mstr. Sept. 26, 2013).  Furthermore, respondent previously cautioned petitioners about filing expert reports prematurely. Response at 8-9. Denying that a petitioner had a reasonable basis for filing his claim based on his failure to ensure that his claim would be supported by an expert before he even filed would be in contravention of the program's intentions. *Guerrero v. Sec'y of HHS*, No. 12-689V, 2015 WL 3745354 n.3 (Fed. Cl. Spec. Mstr. May 22, 2015), *rev'd in part on other grounds,* 124 Fed. Cl. 153 (2015). As described in *Guerrero*, petitioners are strongly discouraged from preemptively providing expert reports, as it results in unnecessary costs to the program. *Id.*

The petitioner had a reasonable basis upon which to file this claim and continue with the claim until it was dismissed.  The undersigned has reviewed the billing records submitted with petitioner's request.  In the undersigned's experience, the request appears reasonable, and the undersigned finds no cause to reduce the requested hours or rates.

### 2.    Challenges to attorneys' rates and time billed.

Respondent "defers to the special master's statutory discretion in determining a reasonable fee award."  Response at 10.  The undersigned has reviewed the billing records submitted with petitioner's request.  In the undersigned's experience, the request appears reasonable, and the undersigned finds no cause to reduce the requested hours or rates.

However, respondent noted that petitioner likely included billing unrelated to this case.  Petitioner billed for preparing a medical record request and drafting and filing a statement of completion on February 13, 2016.  Motion at 11.  Petitioner responded that these entries were attributed to the wrong year and should be dated 2015 not 2016.  Therefore, I will grant petitioner these hours.  Reply at 7.

### 3.    Additional attorneys' fees for petitioner's reply brief.

Petitioner requests additional attorneys' fees in the amount of $3,060.00 for preparing her reply to respondent's response on his application for fees and costs.  This amount was requested in petitioner's reply and no objection was raised.

In this case, petitioner did not file additional billing records to support this request.  However, I find petitioner's reply to be well-reasoned and complete.  Where reasonable basis, or any other challenge is raised against a petitioner's application for fees and costs, it is inevitable that petitioner will expend significant time in order to respond and defend his or her position.  To that end, the necessity now for filing formal applications for fees and costs and then having to respond and defend against objections to those applications results in additional fees being sought.  This requested amount seems reasonable in the context of other cases where supplemental requests for attorneys' fees have been made.  The necessity and extent to which petitioner had to defend herself in this matter favors granting petitioner's counsel the full amount of fees requested.  Thus, the undersigned is granting the petitioner's request for an additional $3,060.00 in attorneys' fees.

## V.    TOTAL AWARD SUMMARY

The Vaccine Act permits an award of reasonable attorneys' fees and costs.  § 15(e).  Based on the reasonableness of petitioner's request, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs.

**Accordingly, the undersigned awards a lump sum of $18,183.45, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to petitioner and petitioner's counsel, Paul Brazil.**

The clerk of the court shall enter judgment in accordance herewith.[7]

**IT IS SO ORDERED.**

**s/Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.